NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, et al., | |
| Plaintiffs, | Civil No. 11-04302 (JAP) |
| v. | **OPINION** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | |

PISANO, District Judge:

Plaintiffs the Delaware Riverkeeper and the Delaware Riverkeeper Network brought this suit under the Clean Water Act, 33 U.S.C. § 1365, against the United States Environmental Protection Agency (EPA); the Administrator of EPA, Lisa Jackson; and the Regional Administrator of EPA Region 2, Judith Enck; for "repeated and ongoing violations" of 33 U.S.C. § 1342(p) and 33 U.S.C. §1319(a)(2). This case comes before the Court on Defendants' Motion to Dismiss for lack of subject matter jurisdiction. The Court decides this Motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this case will be dismissed.

**I.  Background**

The Clean Water Act establishes a comprehensive program designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). It is administered by the EPA and by state agencies through a system of cooperative

1

federalism.  Perhaps the most significant component of the Act is the creation of a permit program called the National Pollutant Discharge Elimination System (NPDES).   The Act prohibits the discharge of pollutants directly from a point source into a body of water, unless the facility has obtained an NPDES permit for such discharges.  33 U.S.C. § 1311(a); 33 U.S.C. § 1342(a).  In 1987, Congress amended the Clean Water Act to require NPDES permits for stormwater discharges from "Municipal Separate Stormwater Sewer Systems," or MS4s.  33 U.S.C. § 1342(p).

The Act initially gives EPA the authority to administer the permit program, but allows states to establish their own programs and apply to the EPA Administrator for approval.  33 U.S.C. § 1342(b).  Once the Administrator finds that a state's NPDES program complies with the minimum requirements of the Clean Water Act and approves it, the state has primary responsibility for administering the permitting system for pollutant discharges within its jurisdiction.  *Id.*  However, the Clean Water Act requires that EPA retain supervisory authority in states, such as New Jersey, with approved permit programs.  For example, the Administrator may withdraw approval of a state program if she finds that it is not being administered in accordance with the Act's requirements.  33 U.S.C. § 1342(b).  EPA also retains review of each state-issued permit, and may prevent a permit from issuing by making a formal objection.  33 U.S.C. § 1342(d).  Relevant to the instant Motion, EPA also retains authority over state permit enforcement.  The Administrator must give notice to the state, and ultimately take over the state's enforcement duties, "[w]henever, on the basis of information available to him, the Administrator finds that violations of permit conditions or limitations . . . are so widespread that such violations appear to result from a failure of the State to enforce such permit conditions or limitations effectively."  33 U.S.C. § 1319(a)(2).

Plaintiffs brought this suit in July 2011 under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, against the EPA Defendants for "repeated and ongoing violations" of § 1342(p) (the stormwater permit requirement) and §1319(a)(2) (the EPA enforcement provision).  Compl. ¶ 3.  Specifically, Plaintiffs allege that certain New Jersey municipalities have approved many development projects with deficient or absent stormwater management plans over the past decade.  Plaintiffs claim that these towns are thereby in blatant violation of their Municipal Stormwater General Permits.  Compl. ¶¶ 45-53.  They further allege that the New Jersey Department of Environmental Protection (DEP) has done nothing to address these violations, and more generally that the DEP enforcement program is ineffectual.  Compl. ¶¶ 54-63.  Finally, the Plaintiffs claim that the EPA Defendants have been apprised of this grossly deficient enforcement, but have failed to take any action to correct this problem pursuant to § 1319(a)(2) (quoted above).  Compl. ¶¶ 70-74.

## II.     Motion to Dismiss

In deciding a Motion to Dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).  All reasonable inferences must be made in the Plaintiff's favor.  *Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996); *Oshiver v. Levin, Fishbien, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994).  This Motion to Dismiss is based on a purely legal issue—the appropriate interpretation of 33 U.S.C. §1319(a)(2).

The sole issue presented by the instant Motion is whether or not § 1319(a)(2) imposes a mandatory or a discretionary duty on the Administrator to find that widespread state NPDES permit violations indicates a state's failure to enforce.  The citizen-suit provision of the CWA waives sovereign immunity for claims alleging "a failure of the Administrator to perform any act

or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2); *see Nat'l Wildlife Fed'n v. Browner*, 127 F.3d 1126, 1128 (D.C. Cir. 1997). Thus, the existence of a non-discretionary duty is a precondition to a citizen suit against EPA under the Clean Water Act. The Defendants assert that this case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Court has no jurisdiction to hear the Plaintiffs' claim, Defendants argue, because the Administrator has discretion over whether to "find" that violations are so widespread as to indicate a failure to enforce. Should the Administrator choose to make such a finding, then her mandatory duty to notify the state would be triggered. The Plaintiffs argue in response that this provision creates a mandatory duty to make the initial finding. In essence, they argue that the Administrator cannot simply decline to make a finding in the face of overwhelming evidence of violations.

The Defendants' argument hinges on the statute's use of the word "whenever." The statute reads: "Whenever, on the basis of information available to him, the Administrator finds that violations of permit conditions or limitations . . . are so widespread that such violations appear to result from a failure of the State to enforce such permit conditions or limitations effectively" he shall take certain specified actions. 33 U.S.C. § 1319(a)(2). Courts have overwhelmingly interpreted analogous provisions to determine that they created discretionary duties and thus could not serve as the basis for citizen suits against EPA.

Notably, the Third Circuit has interpreted a similarly-worded provision of the Clean Water Act to create a discretionary duty. This provision involves certain permits issued by the Army Corps of Engineers pursuant to the Clean Water Act, and reads "[w]henever on the basis of any information available to him the Secretary finds that any person is in violation of any condition or limitation set forth in a permit . . . the Secretary shall" take specified enforcement

4

actions. 33 U.S.C. § 1344(s)(1). The Eighth, Ninth and Tenth Circuits have interpreted another similar provision of the Clean Water Act, 33 U.S.C. § 1319(a)(3), to create a discretionary duty. *Dubois v. Thomas*, 820 F.2d 943, 948 (8th Cir. 1987); *Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001); *Bravos v. EPA*, 324 F.3d 1166, 1173 (10th Cir. 2003). That provision refers to EPA enforcement of the same NPDES permits that are at issue in this case, but deals with individual violators rather than statewide enforcement. 33 U.S.C. § 1319(a)(3). The Fifth Circuit has also interpreted the exact analog to § 1319(a)(3) that appears in the Clean Air Act, 42 U.S.C. § 7413(a), to create a discretionary duty. *City of Seabrook v. Costle*, 659 F.2d 1371, 1374-75 (5th Cir. 1981). *See also NY Public Interest Research Group v. Whitman*, 321 F.3d 316 (2d Cir. 2003) (interpreting the Clean Air Act, 42 U.S.C. § 7661a(i)(1) ("Whenever the Administrator makes a determination that a permitting authority is not adequately administering and enforcing a program, or portion thereof . . . the Administrator shall provide notice to the state and may" apply sanctions.)); *Ohio Public Interest Research Group v. Whitman*, 386 F.3d 792, 798 (6th Cir. 2004) (same).

It is not merely the results of these decisions that guide the Court, but the reasoning. One of the most important legal principles relied upon is that courts must presume that the enforcement duties of the executive branch are discretionary. This presumption exists because enforcement duties implicate important, and often technical, resource allocation and policy choices. *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985); *Harmon Cove Condominium Assoc. v. Marsh*, 815 F.2d 949, 951-952 (3d Cir. N.J. 1987). The Supreme Court held in *Heckler v. Chaney* that the presumption "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." 470 U.S. at 833. The Third Circuit held that it was not rebutted in the case interpreting § 1344(s)(1), regarding

enforcement of Army Corps permits under the Clean Water Act. "The statute imposes no duty on the Secretary to make a finding of violation, because it contains no guidelines for the Secretary to follow in choosing to initiate enforcement activity." *Harmon Cove*, 815 F.2d at 953. The very similar language, i.e., lack of guidance, in the provision before this Court compels the same result. Plaintiffs claim that the language about "widespread" violations in § 1319(a)(2) constitutes sufficient guidance to distinguish it from § 1319(a)(3), and rebuts the presumption of enforcement discretion. However, this language merely identifies the type of violations targeted by the provision, it does not actually guide the agency "in exercising its enforcement powers." *Heckler*, 470 U.S. at 833.

The D.C. Circuit has also held that the EPA's "unitary approach" to a similar two-step statutory duty is appropriate, in interpreting a provision of the Clean Air Act requiring the Administrator to take certain actions "whenever . . . he has reason to believe" that air pollution from the United States is causing harm in a foreign country. *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525 (D.C. Cir. 1990) (interpreting 42 U.S.C. § 7415(a)). The court found that the word "whenever" showed that Congress intended to leave EPA "a degree of discretion" as to whether to make the initial finding that would require him to take action. *Id.* at 1533. EPA had argued that it could not make the initial finding because there was not enough information to take the required actions that would follow. *Id.* at 1528-32. The court found that the ability to make the initial finding was "linked" to the ability to take the required remedial actions, and that therefore EPA's "unitary" approach to its duty was appropriate. *Id.* at 1533-34. In other words, the Administrator may wait to complete the first step of her statutory duty until she is prepared to complete the actions that would then be triggered.

6

Furthermore, courts must only find waivers of sovereign immunity where the statutory text is unambiguous. Because the United States must not be sued without its consent, Congress must "unequivocally" waive its immunity for a suit to lie against the United States or one of its instrumentalities. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Waivers that do exist must be narrowly construed in the government's favor. *Id.* at 192. *See also Dep't of Energy v. Ohio*, 503 U.S. 607 (1992); *United States v. Nordic Village Inc.*, 503 U.S. 30, 37 (1992); *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004). The citizen suit provision of the Clean Water Act is an unambiguous waiver of sovereign immunity, but it only applies to the Administrator's mandatory duties under that law. Federal appellate courts, including the Third Circuit, have held that the very language used here did not unambiguously create a mandatory duty in other contexts. *See*, *e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) ("[I]dentical words used in different parts of the same act are intended to have the same meaning.")

The only case interpreting the very same provision of the Clean Water Act does indeed support Plaintiffs' position. *Save the Valley v. EPA*, 99 F. Supp. 2d 981 (S.D. Ind. 2000). However, this case is from the Southern District of Indiana, and it is contrary to the weight of authority as described above. Its reasoning, which is mirrored by the Plaintiffs' argument before this Court, does not address the presumption in favor of discretionary enforcement or the need for clear statutory language to find waivers of sovereign immunity. This outlying case is difficult to square with the Third Circuit precedent that binds this Court, as well as that of the persuasive appellate opinions described above.

Plaintiffs seek to distinguish their case from Third Circuit precedent by noting that *Harmon Cove* dealt with enforcement against individual violators, not the "breakdown" of an entire NPDES program, which they claim is at issue here. *See also Save the Valley*, 99 F.Supp.

7

at 984, n.4.  Plaintiffs argue that to enforce provisions involving individual permit violations, they can always sue the violators themselves.  Where they seek to remedy New Jersey's systematic failure to enforce, they argue, a citizen suit against the EPA is their only recourse.

The Court does not doubt the gravity of Plaintiffs' allegation that New Jersey's failure to enforce NPDES permits "undermines the entire structure of the CWA"; it is simply unable to find that the magnitude of the alleged violation supports the Plaintiffs' legal conclusion.  The fact remains that Congress used nearly identical language to describe EPA's duties under this section as it used in similar provisions that have been found to create discretionary duties.  *See*, *e.g.*, *Gustafson*, 513 U.S. at 570.  The Plaintiffs have failed to counter the reasoning underlying those decisions, particularly the legal principles regarding discretionary enforcement and sovereign immunity.  In terms of their alternative recourse, the possibility of suit against individual permit holders does, contrary to Plaintiff's assertion, continue to provide them with an opportunity to seek abatement of the illegal pollution they allege.  33 U.S.C. § 1365(a)(1).  To the extent they argue that the Act confers a right to the specific form of recourse they seek here, this argument is unsupported by the law.

### III.    Conclusion

For the reasons set forth above, the Court finds that the Clean Water Act, 33 U.S.C. § 1319(a)(2), does not create a mandatory duty for the Administrator that may give rise to a citizen suit under 33 U.S.C. § 1365(a)(2).  Thus, the Court lacks subject matter jurisdiction to hear this claim, and the Defendants' Motion to Dismiss will be granted.  An appropriate Order follows.

                                                                         /s/ Joel A. Pisano  _____
                                                                         JOEL A. PISANO
                                                                         United States District Judge

Dated:  April 30, 2012